UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**COURTHOUSE NEWS SERVICE,**

                       Plaintiff,

v.

**THOMAS AMBROSINO**, in his official capacity as Court Administrator of the Massachusetts Trial Court,

                       Defendant.

## COMPLAINT

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges the following in support of its Complaint against Defendant Thomas Ambrosino, in his official capacity as Court Administrator of the Massachusetts Trial Court ("Defendant" or "Administrator").

## INTRODUCTION

1. State and federal courts across the country have historically made new civil complaints available to the press and public as the court received them. This tradition gives rise to a qualified First Amendment right of access to new civil complaints. While the First Circuit Court of Appeals has not yet expressly recognized this right, every circuit court presented with the question of whether the First Amendment right of access extends to new civil complaints has held that it does. *See, e.g., Courthouse News Serv. v. Corsones*, 131 F.4th 59, 66-68 (2d Cir. 2025); *Courthouse News Serv. v. New Mexico Admin. Office of Courts*, 53 F.4th 1245, 1264-65 (10th Cir. 2022); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326-28 (4th Cir. 2021).

2. Eighth Circuit Judge Bobby Shepherd described this traditional access during oral arguments in *Courthouse News v. Gilmer, et al.,* Case No. 21-2632 (8th Cir. April 14, 2022), a case involving the same issues as here: "There was a time when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

3. In the transition from paper filing to electronic filing ("e-filing") federal courts and many state courts kept the tradition in place, making complaints available as they crossed the virtual intake counter. However, with the current e-filing procedures in Massachusetts, Defendant withholds the new civil complaints until court staff have finished a series of administrative steps commonly referred to as "processing." As a result, all newly e-filed civil complaints are effectively sealed upon receipt, with access to a large majority of them commonly withheld until at least the day after filing.

4. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to civil complaints. Whether new civil complaints are paper-filed or e-filed, this right of access attaches ***on receipt***, when a new filing is submitted to the court. Policies and practices that cause delays in access are subject to constitutional scrutiny, with Defendant bearing the burden of showing that such policies and procedures are essential to preserve an overriding governmental interest and narrowly tailored to serve that interest.

5. Such access is fundamental and essential to accurate and fair news reporting of civil court actions and, thus, vital to the public's ability to monitor the activities of the judicial branch of government. Pervasive access delays impair the ability of the press to perform that important role. When a complaint is withheld, the news it contains grows stale. The public is left unaware

that a civil action has commenced and that a litigant has invoked the power of the judicial branch of government.

6.  Defendant enforces a policy and practice of withholding access to newly received civil complaints, effectively sealing them, until after manual processing by the clerk is completed. Consequently, access to new e-filed civil complaints in Massachusetts state trial courts ("Massachusetts Courts") often is delayed for days following the court's receipt of the complaint.

7.  The delays in access experienced by Courthouse News throughout Massachusetts Courts, are the result of Defendant's policy and practice of withholding access to new e-filed complaints until after they have been administratively processed by court staff. New complaints e-filed in Massachusetts Courts sit, often for days, in an electronic database where they are withheld from public view while awaiting manual processing by court staff.

8.  These delays are unnecessary, as demonstrated by the federal and state courts across the country, including this Court, that provide access to new complaints on receipt and before processing. Defendant is capable of providing such access but has chosen not to do so. Without Defendant's no-access-before-process policy, there would be no delay.

9.  Courthouse News brings this action to address constitutional wrongs, to challenge the legality of Defendant's policy and practice of restricting access to new e-filed complaints filed with Massachusetts state courts, and to seek declaratory and injunctive relief prohibiting Defendant from enforcing his policy and practice that violates Courthouse News' constitutional right of access to newly e-filed civil complaints.

## JURISDICTION AND VENUE

10.  Courthouse News' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.* This Court has subject

5592723

matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 and 2202 (declaratory relief and further relief).  Defendant is subject to personal jurisdiction in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the headquarters of the Executive Office of the Trial Court, which includes Defendant's office, is located in this District and because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District.

## PARTIES

12.     Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a significant amount of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade.  Courthouse News now employs approximately 223 people, most of whom are editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

13.     Defendant Ambrosino is the Court Administrator of the Trial Court for Massachusetts and is named as a defendant herein in that official capacity.  Defendant Ambrosino, as Administrator, is the administrative head of the Trial Court of the Commonwealth of Massachusetts and is responsible for the day-to-day management of Massachusetts' trial court system, *see* G.L. c. 211B, § 9A, which includes procurement, implementation, development and/or maintenance of all software applications used by the Massachusetts Courts, including the Massachusetts e-filing system.  *See, e.g., id.* at § 9A(v), (x).

14.     Acting in his official capacity, Defendant and those acting under his direction and supervision are directly involved with and/or responsible for the delays in access to new

complaints experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of the Administrator's office.

15. Defendant's actions, as alleged in this Complaint, are under the color of Massachusetts law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

16. Defendant is sued in his official capacity only. Courthouse News seeks relief against Defendant, as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him or at his direction or under his control.

17. Courthouse News is informed and believes that Defendant is responsible for providing access to new complaints filed in Massachusetts courts through the statewide e-filing and public access systems procured and provided by the Administrator's office for use by Massachusetts Courts.

## FACTUAL ALLEGATIONS

**A.  Courthouse News Reports Daily News From Federal And State Courts, Including Massachusetts State Courts.**

18. Courthouse News offers its readers a variety of publications. Its *New Litigation Reports* contain original, staff-written summaries of significant new civil lawsuits and are sent to subscribers via e-mail each evening.

19. Among Courthouse News' other publications is the *Daily Brief*, which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, decisions from state appellate courts, and significant rulings from the federal district courts. Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 23,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles from

across the nation that are posted throughout each day and rotated on and off the page on a 24-hour news cycle.  On May 27, 2025, for example, the news page carried staff-written stories about the war in Ukraine, a U.S. District Court ruling striking down President Trump's executive order targeting the law firm Wilmer Hale,  a federal court lawsuit filed by NPR against the Trump administration challenging an executive order freezing federal funding for public broadcasting, a Texas House bill mandating the Ten Commandments in classrooms, and an $8.2 million verdict against Twitter (now X) following its eviction from a Boulder, Colorado office building.

20. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, and the YouTube news channel.  American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

21. Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and news outlets such as: *The Boston Globe*, The Associated Press, *The Atlanta Journal Constitution*, *Chicago Tribute, The Dallas Morning News*, *Denver Post, Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment

Group, *The Guardian, Honolulu Civil Beat, Las Vegas Review-Journal, Los Angeles Times*, NBC News Digital, North Jersey Media Group, *Pacific Coast Business Times, Phoenix New Times, Portland Business Journal, Seattle Times, St. Paul Business Journal, The Salt Lake Tribune*, *The San Jose Mercury News, The Washington Post, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, and Walt Disney Company. Many of Courthouse News' subscribers have dozens or even hundreds of readers within them.

22. Courthouse News subscribers also include educational institutions, including Boston University, Arizona State University, Baylor College, Drake University Law Library, Columbia Journalism Investigations, Santa Clara University, University of Colorado, University of Maryland – College of Journalism, University of Mississippi Medical Center, University of Nebraska, University of New Mexico, University of North Carolina at Chapel Hill, University of Pennsylvania School of Law, University of South Florida, and Wake Forest University.

23. In Massachusetts, Courthouse News covers general civil litigation, focusing on actions brought against business institutions and public entities. This reporting is included in the Suffolk Report (covering Suffolk County Superior Court and Land Court), the Middlesex and Norfolk Report (covering Middlesex and Norfolk County Superior Courts), and the Greater New England Report (covering all other Massachusetts counties, as well as courts in Maine, New Hampshire, and Vermont), which are sent to subscribers every evening. Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or actions brought only against individuals, unless the individual is well-known or otherwise notable.

24. Massachusetts state courts provide remote access to civil complaints through an online portal accessible to the public. However, civil complaints are not available via this

platform—or by any other means—until after court staff have completed administrative processing.

25. Courthouse News does not seek to review or report on the small number of new civil complaints that are statutorily confidential or accompanied by a motion to seal. Per statute, e-filing is not available for such complaints, which must be filed in paper and are thus easily screened away from press and public access.

26. To prepare the *New Litigation Reports* and identify new cases that warrant coverage, Courthouse News' reporters visit their assigned courts either in person or remotely to review the complaints filed that day and determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up Courthouse News' reporting of new controversies for subscribers and readers.

27. For the period of January 1, 2025, to May 31, 2025, Courthouse News' tracking shows that Massachusetts courts regularly withheld at least one-third of all new civil complaints from the public for at least one day, and often longer, with delays varying significantly among and within the Massachusetts Courts from day-to-day with no predictability.

**B.    A First Amendment Right of Access Attaches to Civil Complaints When the Court Receives Them.**

28. A right of access grounded in the First Amendment applies to civil complaints.

29. The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is

to determine if the restrictions on access to that court process or document satisfy constitutional scrutiny. *See, e.g., Corsones,* 131 F.4th at 66-67 (discussing and applying two-step process established by *Press-Enterprise Co. v. Super. Ct.* ("*Press-Enterprise II*") , 478 U.S. 1 (1986)); *New Mexico Admin. Off. of Cts.*, 53 F.4th at 1264 (same).

30. To answer the question posed by the first step of the analysis, courts in the First Circuit generally apply the *Press-Enterprise II* "experience and logic" test. *In re Boston Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003). To meet this test, a party must establish "(1) a historical tradition of accessibility, and (2) a significant positive role for public access in the functioning of the judicial process in question." *Id*. (citing *Press-Enterprise II* as "setting forth what is now commonly referred to as the 'experience and logic' test for First Amendment access to judicial records"). The "experience" test under the first prong "does not look to the particular practice of any one jurisdiction, but instead to the experience in that type of kind of hearing throughout the United States." *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993).

31. "[T]he federal courts of appeals widely agree" that the First Amendment right of access to information reaches civil judicial proceedings and records, and "every circuit court to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings." *Courthouse News Serv. v. Planet ("Planet III")*, 947 F.3d 581, 590 (9th Cir. 2020) (citing *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases)). It is likewise well recognized that this right of access applies to civil complaints.

32. Applying the "experience and logic" test, courts have recognized the existence of a qualified First Amendment right of access that attaches to civil complaints upon their receipt by a court. *See, e.g., Corsones*, 131 F. 4th at 66 (there is "a presumptive First Amendment right of

9

access to newly filed complaints, which attaches upon a court's receipt of such complaints"); *New Mexico Admin. Off. of Cts.*, 53 F.4th at 1266 (holding that "the right of access attaches when a complaint is submitted to the court"); *Planet III*, 947 F.3d at 591 ("Both sides before us agree that experience and logic support a public right of access to newly filed civil complaints."); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 556-59 (E.D. Va. 2020) ("[T]he Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaints …."), *aff'd*, 2 F.4th 318 (4th Cir. 2021).

33. "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Schaefer*, 440 F. Supp. 3d at 557; *accord Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("Complaints have historically been publicly accessible by default ….").

34. A new complaint serves as the opening bell in a legal dispute. In recognition of the media's traditional role as a surrogate observer for the general public as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters—especially those who visit the courts daily—with access to new civil complaints upon receipt for filing and before administrative processing. This ensures that interested members of the public learn about new cases contemporaneously with their filing, while those cases are most newsworthy and likely to be the subject of public attention and discussion.

35. Historically, reporters covering the courts could review and report on newly-filed civil complaints on the day of filing by looking through the new complaints at the courthouse. This access generally occurred upon the court's receipt of a new complaint and before the clerk's office performed the additional administrative tasks that follow the receipt of a new complaint—a

process that was traditionally called "docketing" but in recent years, especially as courts have moved to electronic case management systems and e-filing, has been referred to as "processing."

36. In other litigation, Courthouse News has collected and filed evidence showing that, in states where it covers the courts in person on a regular basis, there is a history of access to new civil complaints and complaints upon receipt regardless of whether court staff have completed clerical processing. This history is found in every region of the United States—north (Michigan, Minnesota and Wisconsin), south (Alabama, Arkansas, Georgia, Louisiana, Tennessee, Texas, and Virginia), middle (Colorado, Illinois, Nebraska, Ohio, Oklahoma, and Utah), east (Connecticut, New Jersey, New York, Pennsylvania, and Vermont) and west (Alaska, Arizona, California, Hawaii, Nevada, Oregon, and Washington). This evidence "demonstrat[es] that there is a long history of courts making complaints available to the media and the public soon after they are received"—"rather than after it is 'processed'"—"regardless of whether such courts use paper filing or e-filing systems." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, *12-13 (C.D. Cal. May 26, 2016, *aff'd in relevant part, rev'd in one part on other grounds*, 947 F.3d 581 (9th Cir. 2020).

37. "Logical considerations also support a presumption of public access." *Bernstein*, 814 F.3d at 141.

38. The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which includes ongoing judicial proceedings. Courthouse News facilitates those important discussions by visiting courthouses on a daily basis and seeking timely access to newly filed civil complaints in order to report on their contents.

39. The filing of a complaint invokes the authority of the people of the United States, and the American people have a right to know that a plaintiff has invoked their power to resolve a

11

dispute and achieve a personal end. The complaint is the basis for the dispute and plays a significant role throughout all phases of the litigation.

40. Access to the complaint allows the public to supervise the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought. Public access to the complaint also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern. When a complaint is withheld from the public, it leaves the public unaware that a claim has been leveled and that state power has been invoked.

**C.   Delays in Access to New Civil Complaints Infringe Upon Courthouse News' First Amendment Rights.**

41. Where the qualified First Amendment right of access attaches, as it does with new civil complaints, the right attaches when the filer submits, and the court receives, the document, and the press and public generally have a contemporaneous right of access. *See, e.g., Corsones*, 131 F.4th at 67 ("For the right of access to justify its purpose, it must be a right of timely access"); *New Mexico Admin. Off. of Cts.*, 53 F.4th at 1266 ("[T]he right of access attaches when a complaint is submitted to the court."); *Planet III*, 947 F.3d at 588, 591 (qualified right of access attaches to a complaint when it is filed, *i.e.*, when it is received by the court); *Schaefer*, 440 F. Supp. 3d at 559 (the public and press have a "contemporaneous right of access" to newly filed civil actions—meaning "on the same day as filing, insofar as practicable").

42. Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440

F. Supp. 3d at 559-60. Here, Defendant's policies are not essential to preserve higher values and are not narrowly tailored.

43. Numerous federal courts have considered challenges to nearly identical policies in other state courts and concluded the defendant administrators either failed to satisfy their burdens of justifying their policies under constitutional scrutiny or were not likely to do so. *See, Courthouse Serv. v. Jackson*, 2009 WL 2163609, at *4-5 (S.D. Tex. July 20, 2009) (granting preliminary injunction); *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016) (granting preliminary injunction); *Courthouse News Serv. v. Schaefer*, 440 F.Supp.3d 532 (E.D. Va. 2020) (awarding declaratory judgment after bench trial), *aff'd* 2 F.4th 3018 (2021); *Courthouse News Serv. v. Planet*, 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021) (entering declaratory judgment and permanent injunction); *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *19 (D. Vt. Nov. 19, 2021) (granting permanent injunction), *aff'd in part Courthouse News Serv. v. Corsone*s, 131 F.4th 59 (2025); *Courthouse News Serv. v. O'Shaughnessy*, 663 F. Supp. 3d 810, 820 (S.D. Ohio 2023) (granting preliminary injunction); *Courthouse News Serv. v. Omundson*, 2024 WL 4349112, *12 (D. Idaho Sep. 30, 2024) (granting declaratory judgment and permanent injunction), *appeal filed* No. 24-6697 (9th Cir. Nov. 4, 2024).

44. Since Massachusetts's adoption of e-filing, access delays are pervasive. Unlike most federal district courts and many state courts, Massachusetts Courts do not make newly filed complaints available upon e-filing with the court. Instead, Massachusetts Courts withhold the complaints while they sit in an electronic repository, only allowing access after court staff have completed administrative processing. This is confirmed by a notice Massachusetts Courts send to filers upon their submission of new e-filed complaints, which state "the filing has been SUBMITTED to the court for review. Please note that eFiled documents do not become part of

13

the case file and court record until they are reviewed and accepted by court staff." As a direct result, for the period of January 1, 2025, to May 31, 2025, Courthouse News' tracking shows that Massachusetts courts regularly withheld at least one-third of all new civil complaints from the public for at least one day, and often longer, with delays varying significantly among and within the Massachusetts Courts from day-to-day with no predictability.

45. These delays are unnecessary and easily avoidable. Courts across the nation—including the U.S. District Court for the District of Massachusetts—provide the press and public access when complaints are filed through means readily available to Defendant.

46. Processing new complaints is not the problem. All e-filing courts must conduct some kind of administrative processing of new complaints. The problem arises when a court withholds new complaints from the press and public until after processing is complete.

47. Courts that provide access as e-filed complaints are received, regardless of whether court staff have completed clerical processing, include the overwhelming majority of federal district court and state courts in Alabama, Arizona, California (nearly all e-filing courts, covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Iowa, Kansas, Maryland, Missouri, Nevada (in the state's biggest court in Las Vegas), New Mexico, New York, Ohio (numerous counties), Texas (numerous counties), Utah and Vermont. These courts provide this access in various ways, all of which are available to Defendant.

48. Courts, like those identified above, that do not withhold public access for processing allow new civil actions to be read and reported when they are received by the court, when the new action is most newsworthy and capable of commanding public attention.

49. Courthouse News has asked Defendant to stop denying public access to new e-filed complaints until after they have been processed by court staff and has informed Defendant of alternatives other courts use.  Most recently, on January 29, 2025, Courthouse News sent a letter to Defendant asking for assistance in resolving delays in access to new complaints e-filed with the Massachusetts Courts and identifying less restrictive alternatives to Defendant's practice of restricting access to new complaints until after processing. A copy of this letter is attached as Exhibit 1. Defendant did not respond to this letter. As a result, Courthouse News continues to experience significant delays in gaining access to new civil complaints e-filed in Massachusetts Courts.

## **COUNT ONE - Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**

50. Courthouse News incorporates the allegations of Paragraphs 1-49 herein.

51. Defendant's actions under color of state law, including without limitation his policy and practice of withholding newly filed civil complaints from the press and public until after administrative processing, and the resulting delays in access to those complaints, deprive Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

52. The qualified First Amendment right to access new civil complaints filed in Massachusetts Courts arises when those complaints are e-filed, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest.  For Defendant's policy and practice to survive *Press-Enterprise II*'s two-prong balancing test, Defendant "must demonstrate that (1) 'there is a "substantial probability' that [an overriding government interest] would be impaired by immediate access'; and (2) 'no reasonable alternatives exist to "adequately protect" that government interest.'" *New Mexico*

*Admin. Off. of Cts.*, 53 F.4th at 1270.  Defendant cannot satisfy either prong of this test with respect to the policies and practices alleged in this Complaint.

53.     Courthouse News has no adequate remedy at law to prevent or redress Defendant's unconstitutional actions and will suffer irreparable harm as a result of Defendant's violations of Courthouse News' First Amendment rights.  Courthouse News is therefore entitled to a declaratory judgment and permanent injunctive relief to prevent further deprivation of its First Amendment rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Courthouse News prays for judgment against Defendant as follows:

1.      A judgment pursuant to 28 U.S.C. § 2201 declaring that Defendant's policies and practices that knowingly affect delays in access to newly e-filed civil complaints in the Massachusetts Courts, including, *inter alia*, his policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because these policies and practices constitute an effective denial of timely access to new civil complaints, which are public court records to which the First Amendment right of access applies.

2.      A preliminary and permanent injunction against Defendant, including his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him, or at his direction or under his control, prohibiting him from continuing his policies and practices that deny Courthouse News timely access to new e-filed civil complaints, including, *inter alia*, his policy and practice of denying access to complaints until after administrative processing.

3. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. All other relief the Court deems just and proper.

Date:   June 11, 2025

Respectfully submitted,

COURTHOUSE NEWS SERVICE,

By its Attorneys,

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100
jpyle@princelobel.com

Of Counsel:

Jonathan Fetterly
Katherine Keating
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
E-Mail: jon.fetterly@bclplaw.com
E-Mail: katherine.keating@bclplaw.com

Motion for admission *Pro hac vice* forthcoming

5592723